1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                           **EASTERN DIVISION**

11

12  EMILY SPEELMAN,                    )      No. EDCV 09-1222 CW
                                       )
13               Plaintiff,            )      DECISION AND ORDER
             v.                        )
14                                     )
    MICHAEL J. ASTRUE,                 )
15  Commissioner, Social Security )
    Administration,                    )
16                                     )
                 Defendant.            )
17  _____   )

18

19       The parties have consented, under 28 U.S.C. § 636(c), to the

20  jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks

21  review of the Commissioner's denial of disability benefits.  The court

22  finds that judgment should be granted in favor of Defendant, affirming

23  the Commissioner's decision.

24                         **I.   BACKGROUND**

25       Plaintiff Emily Speelman was born on June 6, 1988, and was

26  twenty-one years old at the time of her administrative hearing.

27  [Administrative Record ("AR") 98, 36.] She completed her high school

28  education through home-schooling and has taken some community college

                                      1

classes. [AR 15, 43-44, 47.]  She has no past relevant work experience. [AR 103.]  Plaintiff alleges disability on the basis of attention deficit disorder, hyperactivity, and temporal lobe syndrome with rage. [AR 103.]

## II.   PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on June 26, 2009, and filed on July 7, 2009.  On December 8, 2009, Defendant filed an Answer and Plaintiff's Administrative Record ("AR").  On February 11, 2010, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III.   PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for supplemental security income ("SSI") on June 15, 2006, alleging disability since June 1, 1992.  [JS 2.]  The Plaintiff had two prior childhood disability applications – from June 29, 2001 and June 28, 2002 – which were denied and not appealed. [AR 8.] After the current application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing, which was held on July 18, 2008, before Administrative Law Judge ("ALJ") F. Keith Varni.  Plaintiff appeared with counsel and testimony was taken from Plaintiff and Plaintiff's mother. [AR 36.]  A second administrative hearing was conducted by ALJ Varni on January 6, 2009. [AR 25.]  Plaintiff appeared with counsel and testimony was taken from vocational expert Joseph Moony. [Id.] The ALJ denied benefits in a decision dated March 3, 2009. [AR 8-16.] When the Appeals Council denied review on May 8, 2009, the ALJ's decision became the Commissioner's final decision. [AR 1.]

2

1

### IV.   STANDARD OF REVIEW

2        Under 42 U.S.C. § 405(g), a district court may review the
3  Commissioner's decision to deny benefits.  The Commissioner's (or
4  ALJ's) findings and decision should be upheld if they are free of
5  legal error and supported by substantial evidence.  However, if the
6  court determines that a finding is based on legal error or is not
7  supported by substantial evidence in the record, the court may reject
8  the finding and set aside the decision to deny benefits.  See Aukland
9  v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v.
10 Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240
11 F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094,
12 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.
13 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada
14 v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

15        "Substantial evidence is more than a scintilla, but less than a
16 preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence
17 which a reasonable person might accept as adequate to support a
18 conclusion." Id.  To determine whether substantial evidence supports
19 a finding, a court must review the administrative record as a whole,
20 "weighing both the evidence that supports and the evidence that
21 detracts from the Commissioner's conclusion." Id.  "If the evidence
22 can reasonably support either affirming or reversing," the reviewing
23 court "may not substitute its judgment" for that of the Commissioner.
24 Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

25                    ### V.   DISCUSSION

26     **A.   THE FIVE-STEP EVALUATION**

27     To be eligible for disability benefits a claimant must
28 demonstrate a medically determinable impairment which prevents the

3

claimant from engaging in substantial gainful activity and which is
expected to result in death or to last for a continuous period of at
least twelve months.  <u>Tackett</u>, 180 F.3d at 1098; <u>Reddick</u>, 157 F.3d at
721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial
> gainful activity?  If so, the claimant is found not
> disabled.  If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment?
> If so, proceed to step three.  If not, then a finding of not
> disabled is appropriate.
> Step three: Does the claimant's impairment or
> combination of impairments meet or equal an impairment
> listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
> so, the claimant is automatically determined disabled.  If
> not, proceed to step four.
> Step four: Is the claimant capable of performing his
> past work?  If so, the claimant is not disabled.  If not,
> proceed to step five.
> Step five: Does the claimant have the residual
> functional capacity to perform any other work?  If so, the
> claimant is not disabled.  If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u>
April 9, 1996); <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107
S. Ct. 2287, 96 L. Ed. 2d 119 (1987); <u>Tackett</u>, 180 F.3d at 1098-99; 20
C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or
"not disabled" at any step, there is no need to complete further
steps.  <u>Tackett</u>, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four,
subject to the presumption that Social Security hearings are non-
adversarial, and to the Commissioner's affirmative duty to assist
claimants in fully developing the record even if they are represented
by counsel.  <u>Tackett</u>, 180 F.3d at 1098 and n.3; <u>Smolen</u>, 80 F.3d at
1288.  If this burden is met, a <u>prima</u> <u>facie</u> case of disability is
made, and the burden shifts to the Commissioner (at step five) to

1    prove that, considering residual functional capacity ("RFC")[1], age,

2    education, and work experience, a claimant can perform other work

3    which is available in significant numbers.  Tackett, 180 F.3d at 1098,

4    1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

5            B.  THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

6            Here, the ALJ found that Plaintiff had not engaged in substantial

7    gainful activity since June 15, 2006 (step one); that Plaintiff had

8    "severe" impairments, namely mood disorders and borderline

9    intellectual functioning, with a history of attention deficit disorder

10   (step two); and that Plaintiff did not have an impairment or

11   combination of impairments that met or equaled a "listing" (step

12   three).  [AR 10.] Plaintiff was found to have an RFC to perform a full

13   range of work at all exertional levels, but limited to non-public,

14   simple repetitive tasks, with occasional non-intense contact with

15   coworkers and the public, and to be precluded from fast-paced work.

16   [AR 11.]  Plaintiff had no past relevant work (step four). [AR 14.]

17   The ALJ adopted the testimony of the vocational expert, who testified

18   that a person with Plaintiff's RFC could perform work existing in

19   significant numbers in the national economy, such as cleaner,

20   housekeeper, deliverer, or garment folder (step five). [AR 15.]

21   Accordingly, Plaintiff was found not "disabled" as defined by the

22   Social Security Act. [AR 15.]

23   _____

24       [1]  Residual functional capacity measures what a claimant can
     still do despite existing "exertional" (strength-related) and
25   "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155
     n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to
26   work without directly limiting strength, and include mental, sensory,
     postural, manipulative, and environmental limitations.  Penny v.
27   Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155
     n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a
28   nonexertional limitation.  Penny, 2 F.3d at 959; Perminter v. Heckler,
     765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

1    **C.   PLAINTIFF'S PRESENT CLAIMS**

2         The parties' Joint Stipulation sets out the following disputed

3    issues:

4         1.    Whether the ALJ properly considered the consultative

5               examiner's opinion.

6         2.    Whether the ALJ properly considered the treating

7               psychiatrist's opinion.

8         3.    Whether the ALJ properly considered the State Agency

9               Findings.

10        4.    Whether the ALJ considered the lay witness statement.

11        5.    Whether the ALJ posed a complete hypothetical question to

12              the vocational expert.

13        [JS 2.]

14   **D.   ISSUE ONE: THE CONSULTATIVE EXAMINER'S OPINION**

15        On September 30, 2006, Dr. Kim Goldman, Psy.D., completed a

16   complete psychological evaluation of Plaintiff to determine her

17   functional abilities. [AR 264-268.]  Test results included a Verbal IQ

18   score of 76, a Performance IQ score of 75, and a Full Scale IQ score

19   of 74. [AR 266.]  Dr. Goldman's diagnostic impressions included

20   intermittent explosive disorder, rule out mood disorder not otherwise

21   specified, and borderline intellectual functioning. [AR 267.]  Based

22   on Plaintiff's test results and diagnoses, Dr. Goldman opined that

23   Plaintiff had moderate difficulties in maintaining social functioning

24   and mild to moderate difficulties of concentration, persistence, and

25   the ability to work at a pace appropriate for her age due to

26   borderline intellectual functioning. [AR 267-268.]  Dr. Goldman found

27   Plaintiff's ability to understand, carry out and remember simple

28   instructions not to be impaired and her ability to understand, carry

                                      6

out and remember detailed instructions and complex tasks to be
moderately impaired due to borderline intellectual functioning. [AR
268.]  Dr. Goldman also found Plaintiff's ability to respond
appropriately to coworkers, supervisors and the public to be
moderately impaired due to "immaturity, impulsivity and a dependent
stance" and her ability to respond appropriately to usual work
situations and deal with changes in a routine work setting to be
moderately impaired due to poor judgment. [Id.]  Plaintiff contends
that the ALJ failed to address this opinion.

However, in his decision, the ALJ did discuss the opinion of Dr.
Goldman, specifically noting the IQ test scores and diagnoses noted in
September 2006 psychological evaluation. [AR 14.]  Moreover, the ALJ
evaluated and credited the opinion of Dr. David Glassmire,[2] noting
that it was consistent with the opinions of Dr. Goldman and the State
agency psychiatrist. [AR 12-14.] He credited these opinions over those
of Dr. Jason Yang, M.D., who examined Plaintiff on April 29, 2007, and
found her to have the least restrictive RFC in the record.[3] [AR 14.]
Dr. Glassmire completed a medical interrogatory concerning Plaintiff's
mental impairments on September 22, 2008. [AR 368-370.] Dr. Glassmire
opined that Dr. Goldman's assessment of Plaintiff's functional

---

[2]  The ALJ mistakenly refers to the reports of Dr. Glassmire as
those of Dr. Malancharuvil. [AR 8-16.]

[3]  Dr. Yang found that Plaintiff was "able to follow one- and
two-part instructions," to "adequately remember and complete simple
and complex tasks," to "tolerate the stress inherent in the work
environment, maintain regular attendance, and work without
supervision." [AR 337.] He also found Plaintiff was "able to interact
appropriately with supervisors, coworkers, and the public in the
workplace." [Id.]  The ALJ noted that Dr. Yang gave Plaintiff "the
least restrictive limitations, but I have not given Dr. Yang as great
a weight as that of Dr. Goldman or the state agency review
physicians." [AR 14.]

abilities was the "best current estimate of her cognitive functioning." [AR 369.] Dr. Glassmire found that Dr. Goldman's consultative examination indicated that Plaintiff did not equal a listing and had "impairments in social functioning as well as concentration, persistence, and pace." [Id.] Dr. Glassmire opined that Plaintiff would be "capable of a job that entails simple repetitive tasks, no contact with the public, occasional non-intense contact with coworkers and supervisors, and no fast-paced work." [AR 370.]

The ALJ in this case determined that Plaintiff had an RFC limiting her to non-public, simple repetitive tasks, with occasional non-intense contact with coworkers and the public, and a preclusion from fast-paced work. [AR 11.] He based this determination on the opinion of Dr. Glassmire, which was based on and consistent with that of Dr. Goldman, as the ALJ noted. [AR 13-14.] Further, the ALJ credited the more restrictive RFC of Dr. Goldman and Dr. Glassmire over the less restrictive RFC of Dr. Yang. [Id.] The RFC determination by the ALJ takes into account each of the limitations listed by Dr. Goldman and adopts his opinion. [AR 13-14, 264-268.] Accordingly, Issue One does not warrant reversal.

**E.    ISSUE TWO: THE TREATING PSYCHIATRIST'S OPINION**

Plaintiff was admitted to the College Hospital Costa Mesa from September 17 to September 25, 2002. [AR 179-210.] Plaintiff's "chief complaint on admission" was that her "medicines [weren't] right" and she was admitted after becoming "physically assaultive with her mother." [AR 182.] Dr. Jon Chaffee, M.D., indicated that Plaintiff had a global assessment of functioning ("GAF") score of 40 upon discharge

8

1  and that her highest GAF score in the last year had been 60.[4] [AR
2  182.] Plaintiff contends that the ALJ's failure to address these
3  scores was improper.[5]

4      In this case, the ALJ did not address the Plaintiff's GAF scores
5  in his decision.  However, this is not grounds for reversal.  An ALJ
6  does not commit legal error by failing to incorporate a GAF score into
7  his disability assessment.  See 65 Fed. Reg. 50746, 50764-65 ("The GAF
8  scale . . . does not have a direct correlation to the severity
9  requirements in our mental disorders listing."); McFarland v. Astrue,
10 288 Fed. Appx. 357, 359 (9th Cir. 2008) (finding the ALJ's failure to
11 address Plaintiff's three GAF scores was not legal error); see also
12 Howard v. Comm'r of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002)
13 ("While a GAF score may be of considerable help to the ALJ in
14 formulating the RFC, it is not essential to the RFC's accuracy.  Thus,
15 the ALJ's failure to reference the GAF score in the RFC, standing
16 alone, does not make the RFC inaccurate.").  When a GAF score
17 indicating serious symptoms is not addressed by an ALJ, courts have
18 held that this amounts at most to harmless error depending on the
19 circumstances.  See Quaite v. Barnhart, 312 F.Supp.2d 1195, 1200 (E.D.
20
21

22 [4] A GAF score represents a clinical evaluation of an
   individual's overall level of functioning.  A GAF score of 31 to 40
23 indicates some impairment in reality testing or communication or major
   impairments in several areas, such as work or school, family
24 relations, judgment, thinking, or mood.  A GAF score of 51 to 60
   indicates moderate symptoms or moderate difficulty in social,
25 occupational, or school functioning.  DSM-IV, American Psychiatric
   Association, (Washington, 1994).

26 [5] Plaintiff also argues that the ALJ failed to address a
   discharge summary completed by a Dr. Maher Kozman, M.D., on September
27 26, 2002. [JS 7.] However, Plaintiff was discharged on September 25,
   Plaintiff has not provided a cite to this report, and the record
28 appears to contain no such summary.

Mo. 2004)(finding harmless the ALJ's failure to discuss a GAF score of 50 at any point in his decision).  Here, the ALJ's decision not to utilize Plaintiff's earlier GAF scores in his RFC determination does not amount to a legal error.[6]  Accordingly, Issue Two does not warrant reversal.

### F.   ISSUE THREE: THE STATE AGENCY FINDINGS

On October 23, 2006, Dr. K.D. Gregg, M.D., completed a mental residual functional capacity assessment of Plaintiff. [AR 280-281.] He checked off boxes indicating that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, that she was moderately limited in her ability to interact appropriately with the general public and in her ability to accept instructions and respond appropriately to criticism from supervisors, and that she was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. [Id.] Plaintiff contends that the ALJ did not consider this assessment in his decision.

In this case, the ALJ in fact adopted the opinion of Dr. Gregg. [AR 13-14.] The conclusion section of the RFC form completed by Dr. Gregg indicates that Plaintiff is "[c]apable of NP SRTs," or non-public, simple, repetitive tasks. [AR 282.] This is the RFC that the

---

[6]  Additionally, the GAF scores at issue are from 2002 (when Plaintiff was fourteen), which were relevant to Plaintiff's two prior childhood disability claims that were denied and not appealed.  For the current application, the relevant period of disability is from June 16, 2006. [AR 8.]  Further, these GAF scores are from Plaintiff's lowest point in the record – her only hospitalization – and the ALJ credited Dr. Glassmire's opinion that Plaintiff's condition has improved as she has gotten older. [AR 13-14, 368-370.] The ALJ need not address evidence that is not significant or probative to the disability determination. See Vincent v. Heckler, 739 f.2d 1393, 1394-95 (9th Cir. 1984).

1  ALJ adopted in his decision.  Contrary to Plaintiff's contention, the
2  ALJ credited Dr. Gregg's opinion and utilized it – along with the
3  consistent opinions of Dr. Glassmire and Dr. Goldman – in formulating
4  Plaintiff's RFC. [AR 13-14.] Accordingly, Issue Three does not warrant
5  reversal.

6      **G.   ISSUE FOUR: THE LAY WITNESS STATEMENT**

7      Plaintiff's mother, Sara Speelman, completed a Function Report –
8  Adult – Third Party on July 20, 2006. [AR 115-122.] Mrs. Speelman
9  reported that Plaintiff took care of her pet cat with reminders, could
10 prepare her own simple meals, could groom herself with some reminders,
11 that Plaintiff performed household chores, went shopping with her
12 mother, attended youth group and church, had difficulty handling
13 money, and with following instructions, getting along with others,
14 understanding, completing tasks, concentration, and memory.  [Id.] At
15 the administrative hearing, Mrs. Speelman testified that Plaintiff
16 could perform chores, that she was active in youth group and church,
17 and that it was important for Plaintiff to stay busy.  [AR 51.]
18 Plaintiff contends that the ALJ discounted this testimony without
19 providing explanation, and that this warrants reversal. [JS 13-15.]

20     In determining whether a claimant is disabled, an ALJ must take
21 into account lay witness testimony concerning a claimant's ability to
22 work unless the ALJ expressly determines not to and gives reasons
23 germane to each witness for doing so.  Stout v. Commissioner, Social
24 Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Lewis v. Apfel, 236
25 F.3d 503, 511 (9th Cir. 2001). "[W]here the ALJ's error lies in a
26 failure to properly discuss competent lay testimony favorable to the
27 claimant, a reviewing court cannot consider the error harmless unless
28 it can confidently conclude that no reasonable ALJ, when fully

crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056; see also Robbins v. Social Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).  Here, the ALJ's failure to fully address Mrs. Speelman's testimony was harmless error.

In this case, the ALJ summarized the testimony and function reports of both Plaintiff and her mother and found that "statements concerning the intensity, persistence, and limiting effects" of Plaintiff's symptoms were not credible. [AR 12.] The forms and testimony of the Plaintiff and her mother were virtually identical. [AR 39-51, 115-131.] In fact, at the top of Plaintiff's mother's third party function report, Plaintiff's mother wrote "we have received two forms to fill out – one for her and one for third party.  It would be very stressful for Emily to fill this kind of questionnaire out.  I called and talked to someone at your office and they said my copy would be good enough." [AR 115.] Plaintiff did submit a form as well, but with virtually identical, although abbreviated, answers. [AR 115-131.]  The ALJ rejected Plaintiff's testimony with clear and convincing reasons that were not challenged on appeal. [AR 12.] Accordingly, Mrs. Speelman's testimony did not add substantial weight to Plaintiff's claim.  Cf. Robbins, 466 F.3d at 885 (finding reversible error in failure to consider testimony of claimant's son, noting that "[b]ecause the ALJ did not make a legally sufficient adverse credibility finding with regard to [the claimant's] own testimony, we cannot say with respect to [the son's] testimony that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination")(citations and internal quotation marks omitted).  Under these circumstances, the failure to address fully this evidence was inconsequential to the ultimate

1  determination of non-disability.  <u>Stout</u>, 454 F.3d at 1055.

2  Accordingly, Issue Four does not warrant reversal.

3      **H.**    **ISSUE FIVE: THE HYPOTHETICAL POSED TO THE VOCATIONAL EXPERT**

4      Plaintiff contends that the hypothetical posed to the vocational

5  expert was incomplete and should have contained further limitations

6  based on the reports discussed in Issues Two and Three.  However, an

7  ALJ is only required to submit limitations to a vocational expert that

8  he finds to be supported by the evidence.  <u>Bayliss v. Barnhart</u>, 427

9  F.3d 1211, 1217-18 (9th Cir. 2005).  As Issues Two and Three are

10 without merit, they do not call into question the hypothetical posed

11 to the vocational expert.  Accordingly, Issue Five does not warrant

12 reversal.

13                **VI.**    <u>**ORDERS**</u>

14     Accordingly, **IT IS ORDERED** that:

15     1.    The decision of the Commissioner is **AFFIRMED**.

16     2.    This action is **DISMISSED WITH PREJUDICE**.

17     3.    The Clerk of the Court shall serve this Decision and Order

18 and the Judgment herein on all parties or counsel.

19

20 DATED: July 29, 2010

21                               _Carla M. Woehrle_

22                           CARLA M. WOEHRLE

                    United States Magistrate Judge

23

24

25

26

27

28